UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **FIRST BAPTIST CHURCH MINERAL WELLS,** § § § | |
| *Plaintiff,* § | **CIVIL ACTION NO. 4:24-cv-00949-P** |
| § | |
| v. § | |
| § | |
| **BROTHERHOOD MUTUAL INSURANCE COMPANY,** § § § | |
| *Defendant.* § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

**COMES NOW**, Platintiff, FIRST BAPTIST CHURCH MINERAL WELLS ("Plaintiff" or "Church"), and files this *Plaintiff's First Amended Complaint* against Defendant BROTHERHOOD MUTUAL INSURANCE COMPANY ("Defendant" or "Brotherhood Mutual"), and for cause would respectfully show unto the Court the following:

### I. PARTIES

1. Plaintiff First Baptist Church Mineral Wells is a Domestic Non-Profit Corporation, organized for religious purposes, duly incorporated and organized in the State of Texas, with its principal place of business located in Mineral Wells, Palo Pinto County, Texas.

2. Defendant Brotherhood Mutual Insurance Company is a foreign insurance company registered to engage in the business of insurance in the State of Texas. Brotherhood Mutual is incorporated in the State of Indiana with its principal place of business in Fort Wayne, Indiana. Defendant was previously served with the Original Petition, filed its Answer in state court, and subsequently removed this matter to this Court.

## II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because:

    a. There is complete diversity of citizenship between Plaintiff, a Texas non-profit corporation with its principal place of business in Texas, and Defendant, an Indiana corporation with its principal place of business in Indiana;

    b. The amount in controversy exceeds $75,000, exclusive of interest and costs, as the cost to properly repair the Property exceeds $1,000,000.

4. Venue is proper in the Fort Worth Division of the Northern District of Texas pursuant to 28 U.S.C. § 1391(b)(2) because:

    a. A substantial part of the events or omissions giving rise to this claim occurred in this district and division;

    b. The Property that is the subject of the action is situated in this district and division;

    c. The insurance policy at issue was to be performed in this district and division.

## III. FACTUAL BACKGROUND

### A. The Property and Insurance Policy

5. Plaintiff owns and operates a church complex located at 100 SW 4th Ave., Mineral Wells, Texas 76067 (the "Property"). The Property consists of multiple connected structures with various roofing systems, including: (a) areas with flat roofs covered by sprayed polyurethane foam (SPF) roofing systems, (b) chapel area with laminated asphalt shingles, and (c) additional areas with metal roofing.

6. The flat roofs with SPF covering were completely replaced in 2013 following a previous hail event.

7. Defendant issued Commercial Insurance Policy No. 42MLA0449920 (the "Policy") to Plaintiff, with effective dates from November 1, 2022, through November 1, 2023 (the "Policy Period").

8. Under the Policy, Plaintiff agreed to pay premiums in exchange for Defendant's promise to provide insurance coverage protecting the Property from certain covered losses, including damage caused by wind and hail.

### B. The Storm Event and Resulting Damage

9. On March 17, 2023, during the Policy Period, a severe storm system impacted Palo Pinto County, Texas, and specifically the Property. According to meteorological data and historical weather data, the storm event produced hail up to 2.50 inches in diameter, and wind gusts reached speeds up to 55 mph.

10. The storm caused extensive physical damage to the Property, including but not limited to:

   a. Widespread hail impact damage across all roofing systems;
   b. Fractures and spatter marks on the SPF roof coating consistent with hail strikes;
   c. Dents and damage to roof apertures and metal components;
   d. Damage to stained glass windows;
   e. Water intrusion through storm-created openings; and
   f. Consequential interior water damage.

11. Specifically regarding the SPF flat roofs, the storm caused:

   a. Numerous fractures radiating from central points resembling crow's feet, consistent with hail impacts;
   b. Semi-circular fractures characteristic of hail strikes;
   c. Circular displacements and spatter marks indicative of hail impacts;
   d. Compromised protective elastomeric coating; and
   e. Water infiltration into the roof system through hail-created openings.

### C. Claim Submission and Initial Inspection

12. Following the storm, Plaintiff promptly reported the damage to Defendant, who assigned claim number 0649252 (the "Claim") and senior adjuster Diane Beard to handle the Claim.

13. Ms. Beard retained Carl Walden from Insurance Claim Services, Inc. to inspect the Property and assess the storm damage.

14. On June 5, 2023, Mr. Walden conducted an inspection of the Property, meeting with J.J. Johnson, the chairman of the Church's property committee, and Herb McConatchy, Plaintiff's roofing contractor from Quick Roofing.

15. Prior to Mr. Walden's inspection, Mr. McConatchy had thoroughly inspected the Property's roofing systems; documented extensive hail damage to the asphalt shingle, metal, and SPF roof systems; provided photographs to Defendant showing clear evidence of hail damage to the flat roofs and the Property in general; and, obtained core samples from the flat roofs showing moisture infiltration.

16. During his inspection, Mr. Walden:
    a. Spent only 10-20 minutes examining the flat roofs;
    b. Failed to walk the entire roof area;
    c. Ignored widespread and obvious hailstone strikes pointed out by Mr. Johnson and Mr. McConatchy;
    d. Refused to accept or examine the core samples offered by Mr. McConatchy showing moisture infiltration;
    e. Stated he "was not authorized to pay for the hail damage to the flat roofs."

17. When examining interior damage, Mr. Walden:
    a. Refused to inspect rooms and areas beneath the flat roofs;
    b. Ignored obvious water damage in these areas;
    c. Stated there was "no point" in inspecting these areas because Defendant "was not going to pay for it."

### D. Initial Claim Decision and Inconsistent Coverage Positions

18. On June 21, 2023, Ms. Beard, on behalf of Defendant, issued a determination letter that:

    a. Acknowledged and paid for hail damage to the chapel's shingle roof;
    b. Covered interior water damage beneath the shingle roof areas;
    c. Denied coverage for damage to the flat roofs despite clear evidence of hail damage;
    d. Provided no reasonable basis for accepting hail damage to one portion of the connected roofing system while denying it to adjacent areas exposed to the same storm conditions.

19. This coverage position was inherently contradictory because:

    a. Defendant acknowledged hail of sufficient size and intensity to damage the shingle roof;
    b. The flat roofs are physically connected to and adjacent to the shingle roof areas;
    c. Both roofing systems were equally exposed to the same hail event;
    d. Defendant offered no meteorological or engineering basis for concluding hail could damage one portion of the roof while leaving adjacent areas undamaged.

### E. Public Adjuster Involvement and Supplemental Payments

20. In July 2023, Plaintiff retained YPA Public Adjusters to assist with the Claim.

21. Justin Young from YPA conducted an inspection that revealed that there was significant hail damage to the flat roofs consistent with Mr. McConatchy's findings, as well as previously undocumented damage to stained glass windows.

22. Following YPA's involvement, Defendant issued a supplemental payment for the stained glass damage on July 18, 2023, yet Defendant still continued to deny coverage for the flat roof damage without reasonable basis.

### F. Engineering Investigations and Reports

23. On September 28, 2023, Defendant's engineer, R. Kean Jenner of HAAG Engineering Co., inspected the Property.

24. Mr. Jenner's October 5, 2023, report:

    a. Contradicted Mr. Walden's finding of no damage by acknowledging hail damage to the flat roofs;
    b. Characterized the damage as "light";
    c. Recommended "spot repairing" the fractures rather than proper system replacement; and,
    d. Failed to address the long-term implications of partial repairs to a compromised roofing system.

25. On January 4, 2024, without conducting a re-inspection, Mr. Jenner issued a supplemental report that:

    a. Continued to acknowledge hail damage to the flat roofs;
    b. Recommended partial re-foaming of damaged areas;
    c. Failed to conduct proper moisture testing or take core samples; and,
    d. Did not address the systemic nature of the damage.

26. Based on Mr. Jenner's supplemental report, Defendant issued a payment of $46,407.88, an amount insufficient to:

    a. Properly repair the entire damaged roofing system;
    b. Return the Property to its pre-loss condition;
    c. Prevent future water infiltration and damage.

27. In contrast, Plaintiff retained ORLO Forensics to conduct a comprehensive investigation of the damage. ORLO's investigation revealed:

    a. Extensive hail impact damage across all roofing systems;
    b. Numerous fractures and compromised areas in the SPF coating;
    c. Widespread moisture infiltration confirmed through multiple testing methods;
    d. The necessity of full roof replacement due to:
        i. Extensive moisture infiltration;
        ii. Multiple existing roof layers;
        iii. Code compliance requirements.

28. ORLO's investigation specifically documented:

    a. Water visibly leaking from the roof system;
    b. Moisture infiltration confirmed by:

    c. Three separate moisture meters;
    d. Tramex scanning equipment;
    e. Cobalt chloride testing;
    f. Failed repair attempts resulting in blistering and additional fracturing;
    g. The impossibility of code-compliant repairs without full system replacement.

## IV. CAUSES OF ACTION

### A. Breach of Contract

29. Plaintiff incorporates by reference all preceding paragraphs.

30. The Policy constitutes a valid and enforceable contract between Plaintiff and Defendant.

31. Plaintiff has fully performed its contractual obligations by:

    a. Paying all required premiums;
    b. Promptly reporting the loss;
    c. Providing access for inspections;
    d. Cooperating with claim investigations;
    e. Mitigating damages through temporary repairs;
    f. Providing additional documentation as requested;
    g. Engaging professionals to document the damage.

32. Defendant materially breached the Policy by:

    a. Failing to pay for all covered damage;
    b. Conducting inadequate and outcome-oriented inspections;
    c. Making arbitrary and contradictory coverage decisions;
    d. Refusing to acknowledge the full scope of damage;
    e. Proposing insufficient repairs that would not restore the Property to its pre-loss condition;
    f. Denying coverage without reasonable basis;
    g. Misrepresenting Policy terms and coverage;
    h. Failing to conduct a proper investigation;
    i. Ignoring clear evidence of covered damage;
    j. Violating industry standards for claims handling;
    k. Failing to apply proper engineering and construction principles.

33. Defendant's contradictory positions demonstrate its breach:

    a. Initially denying any hail damage to flat roofs through Mr. Walden while acknowledging severe hail damage to adjacent roofing systems;
    b. Later acknowledging hail damage to flat roofs through HAAG but minimizing its severity without proper testing;
    c. Paying for water damage under shingled areas while denying similar damage under flat roofs;
    d. Proposing spot repairs while ignoring evidence of systemic damage;
    e. Acknowledging some covered damage while arbitrarily limiting scope without reasonable basis.

34. Defendant's breach has caused Plaintiff to suffer:

    a. Direct physical damage to the Property;
    b. Consequential water damage;
    c. Increased repair costs due to delayed proper repairs;
    d. Additional expenses for temporary repairs;
    e. Costs for engineering investigations;
    f. Lost use of portions of the Property;
    g. Ongoing deterioration of building components;
    h. Attorney's fees and related expenses.

### B. Breach of Duty of Good Faith and Fair Dealing

35. Plaintiff incorporates by reference all preceding paragraphs.

36. Defendant's conduct constitutes a breach of the duty of good faith and fair dealing through:

    a. Mr. Walden's predetermined outcome-oriented inspection, evidenced by his statement that he "was not authorized to pay for the hail damage to the flat roofs" before completing his inspection;
    b. Refusing to inspect obvious water damage beneath flat roofs while paying for similar damage under shingled areas;
    c. Ignoring photographic evidence of hail damage provided before the inspection;
    d. Refusing to accept or examine core samples showing moisture infiltration;
    e. Conducting a cursory 10-20 minute roof inspection of a complex commercial property;
    f. Making coverage decisions based on authorization limits rather than actual damage;
    g. Hiring engineering firms known for favoring carrier positions;
    h. Ignoring contradictions between initial denial and subsequent engineering findings;

      i. Proposing inadequate repairs known to be insufficient for long-term resolution.

37. Defendant's bad faith is further demonstrated by:

    a. Its shifting and contradictory positions:

        i. Initial complete denial of flat roof damage;
        ii. Later acknowledgment of damage but minimization of scope;
        iii. Final proposal of inadequate repairs;

    b. Its selective acknowledgment of evidence:

        i. Accepting evidence of hail damage to shingles while ignoring identical evidence on flat roofs;
        ii. Paying for water damage in some areas while denying it in others without reasonable distinction;
        iii. Ignoring professional opinions and documentation from Plaintiff's experts.

### C. Violations of the Texas Insurance Code

38. Plaintiff incorporates by reference all preceding paragraphs.

*Prompt Payment of Claims Violations*

39. Defendant violated Texas Insurance Code Chapter 542 by:

    a. Failing to pay for the claim within the statutory period;
    b. Delaying payment without reasonable basis;
    c. Failing to properly investigate the claim.

40. Specifically, Defendant had sufficient information to evaluate and pay the claim by June 21, 2023, as evidenced by:

    a. Clear documentation of hail damage;
    b. Obvious storm-created openings;
    c. Visible water intrusion;
    d. Professional assessments of damage.

*Unfair Settlement Practices Violations*

41. Defendant violated Texas Insurance Code § 541.060 by engaging in unfair settlement practices, including:

42. Misrepresenting material facts [§ 541.060(a)(1)] by:

    a. Claiming no hail damage to flat roofs while acknowledging hail damage to adjacent areas;
    b. Suggesting spot repairs would adequately address systemic damage;
    c. Representing that interior damage under flat roofs was unrelated to storm damage;
    d. Stating limitations on coverage authority before completing inspection;
    e. Misrepresenting the scope and nature of covered damage;
    f. Claiming proper investigation was conducted despite spending minimal time on roofs;
    g. Suggesting partial repairs would restore the Property to pre-loss condition.

43. Failing to attempt good faith settlement [§ 541.060(a)(2)] by:

    a. Conducting cursory inspections;
    b. Ignoring clear evidence of damage;
    c. Making arbitrary coverage decisions;
    d. Proposing inadequate repairs;
    e. Refusing to acknowledge the full scope of damage;
    f. Predetermining coverage outcomes before inspection;
    g. Ignoring evidence of widespread damage;
    h. Refusing to consider core samples and moisture testing;
    i. Failing to properly investigate interior damage;
    j. Disregarding professional opinions and documentation.

44. Failing to provide reasonable explanation [§ 541.060(a)(3)] by:

    a. Not explaining the contradiction between acknowledging hail damage to some areas while denying it to others;
    b. Failing to justify partial repair recommendations;
    c. Not addressing evidence of systemic damage.

45. Refusing to pay without adequate investigation [§ 541.060(a)(7)] by:

    a. Limiting roof inspection to 10-20 minutes;
    b. Refusing to examine core samples;

    c. Ignoring evidence of water infiltration;
    d. Failing to conduct proper moisture testing;
    e. Not addressing code compliance issues.

### D. Violations of the Texas Deceptive Trade Practices Act

46. Plaintiff incorporates by reference all preceding paragraphs.

47. Plaintiff is a consumer under the DTPA because it: (a) Sought goods or services by purchasing insurance coverage; (b) purchased those services from Defendant; and, (c) used those services for commercial purposes.

48. Defendant violated the DTPA by:

    a. Engaging in false, misleading, or deceptive acts or practices;
    b. Engaging in unconscionable actions or courses of action;
    c. Making misrepresentations regarding the Policy and coverage;
    d. Failing to disclose information concerning services;
    e. Taking advantage of Plaintiff's lack of knowledge to a grossly unfair degree.

49. Specifically, Defendant:

    a. Represented that its services had characteristics or benefits they did not have;
    b. Advertised insurance services with intent not to sell them as advertised;
    c. Made misrepresentations regarding the Policy's coverage;
    d. Failed to disclose information about claims handling practices;
    e. Engaged in an unconscionable course of action by:

        i. Taking advantage of Plaintiff's lack of expertise in insurance claims;
        ii. Using overwhelming bargaining power to avoid proper payment;
        iii. Requiring Plaintiff to accept inadequate repairs or face denial;
        iv. Forcing Plaintiff to incur substantial costs to prove covered damage.

50. Defendant's violations were committed knowingly and intentionally, as evidenced by:

    a. Predetermined denial of flat roof coverage before inspection;
    b. Systematic minimization of damage despite clear evidence;
    c. Shifting positions without reasonable basis;
    d. Refusing to consider clear evidence of damage;
    e. Proposing repairs known to be inadequate.

## V. DAMAGES

51. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered actual damages in excess of the minimum jurisdictional limits of this Court, including:

    a. The cost to properly repair or replace the damaged Property;
    b. Consequential damages from delayed repairs and inadequate temporary repairs;
    c. Additional costs for temporary repairs and mitigation efforts;
    d. Professional fees for damage assessment and engineering reports;
    e. Lost use of portions of the Property;
    f. Ongoing deterioration of building components;
    g. Attorney's fees and expenses.

52. Additionally, Plaintiff seeks:

    a. Statutory penalty interest under Texas Insurance Code Chapter 542;
    b. Treble damages under the DTPA for knowing and intentional conduct;
    c. Attorney's fees under Texas Civil Practice & Remedies Code § 38.001;
    d. Attorney's fees under the Texas Insurance Code;
    e. Attorney's fees under the DTPA;
    f. Costs of court;
    g. Pre- and post-judgment interest at the maximum rate allowed by law; and,
    h. Any other damages the jury may find Plaintiff entitled to.

## VI. CONDITIONS PRECEDENT

53. All conditions precedent to Plaintiff's claims for relief have been performed, have occurred, or have been waived.

## VII. JURY DEMAND

54. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury and has tendered the appropriate fee.

## VIII. PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff First Baptist Church Mineral Wells prays that upon final hearing of this cause:

1) Judgment be entered against Defendant Brotherhood Mutual Insurance Company;
2) Plaintiff recover all actual damages as alleged herein;
3) Plaintiff recover all statutory damages, penalty interest, and treble damages as allowed by law;
4) Plaintiff recover all reasonable and necessary attorney's fees;
5) Plaintiff recover pre-judgment interest and post-judgment interest at the highest rates allowed by law;
6) Plaintiff recover all costs of court; and
7) Plaintiff have such other and further relief, at law or in equity, to which it may show itself justly entitled.

Respectfully submitted,

*/s/ Jordan M. Torry*
Jordan M. Torry
State Bar No. 24058152
jtorry@dcclawfirm.com
Preston J. Dugas III
State Bar No. 24050189
pdugas@dcclawfirm.com
Andrew D. Spadoni
State Bar No. 24109198
aspadoni@dcclawfirm.com

**DUGAS & CIRCELLI, PLLC**
4800 Bryant Irvin Court
Fort Worth, Texas 76107
Telephone: (817) 817-7000
Facsimile: (682) 219-0761

**ATTORNEYS FOR PLAINTIFF**